IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **LACREETA D. ALEXANDER,** | ) | **CASE NO. 3:11cv1254** |
| Plaintiff, | ) | |
| v. | ) | **MAGISTRATE JUDGE GREG WHITE** |
| **COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,** | ) | |
| Defendant. | ) | **MEMORANDUM OPINION & ORDER** |

Plaintiff Lacreeta D. Alexander ("Alexander") challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying her claim for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Title II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is vacated and the case is remanded for further proceedings consistent with this opinion.

## I. Procedural History

On June 5, 2007, Alexander filed an application for DIB, POD, and SSI alleging a disability onset date of April 10, 2006, and claiming that she was disabled due to epilepsy and affective disorders. (Tr. 41-44.) Her application was denied both initially and upon reconsideration. Alexander timely requested an administrative hearing.

On March 16, 2009, an Administrative Law Judge ("ALJ") held a hearing during which Alexander, represented by counsel, testified. No vocational expert testified. On May 22, 2009, the ALJ found Alexander was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. The ALJ's decision became the final decision of the

Commissioner when the Appeals Council denied further review.

## II. Evidence

### *Personal and Vocational Evidence*

Age 31 at the time of her administrative hearing, Alexander is a "younger" person under social security regulations. (Tr. 24.) *See* 20 C.F.R. §§ 404.1563 & 416.963. She has a high school education and past relevant work as cashier, stocker, warehouse laborer, janitor, carpet cleaner, childcare worker, fast food worker, and bookkeeper. (Tr. 19.)

### *Hearing Testimony*

At the hearing, Alexander testified as follows:

- She is married and has three children, ages eleven, six, and four. (Tr. 24.)

- Two of her children have epilepsy and receive disability. (Tr. 25.)

- She has a driver's license, but does not drive as she has not been seizure-free for a six-month period. (Tr. 26, 34.)

- She has migraine headaches most days that prevent her from getting out of bed. (Tr. 28.) Her headache medication makes her nauseous. *Id.*

- She still experiences seizures, causing her to lose consciousness. (Tr. 29.) The seizures are less frequent because of her medication, but she still has them. *Id.*

- Her husband does most of the household work, although she tries to help the children with homework. (Tr. 33-34.) She helps make the grocery lists, but her husband does the shopping. (Tr. 34.)

- She goes to psychological counseling once a week for her depression, obsessive-compulsive disorder, and anxiety. (Tr. 37-38.) Her compulsive thoughts interfered with past jobs. (Tr. 38.)

## III. Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 & 404.1505(a).[1]

---

[1] The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe

A claimant is entitled to a POD only if: (1) she had a disability; (2) she was insured when she became disabled; and (3) she filed while she was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Alexander was insured on her alleged disability onset date, April 10, 2006, and remained insured through December 31, 2011. (Tr. 12.) Therefore, in order to be entitled to POD and DIB, Alexander must establish a continuous twelve month period of disability commencing between those dates. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen*, 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

A claimant may also be entitled to receive SSI benefits when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

### IV. Summary of Commissioner's Decision

The ALJ found Alexander established medically determinable, severe impairments, due to seizure disorder, headaches, neck and back pain, depression, and obsessive-compulsive disorder; however, her impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Alexander was found incapable of performing her past work activities, but was determined to have a Residual Functional Capacity ("RFC") for a limited range of light work. (Tr. 20.) The ALJ then used the Medical Vocational Guidelines

---

impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

("the grid") to determine that Alexander is not disabled.[2]

## V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether the proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations or failure to provide the reviewing court with a sufficient basis to determine that the

---

[2] The ALJ relied on Medical-Vocational Rule 202.20, noting that Alexander's "additional limitations have little or no effect on the occupational base of unskilled light work." (Tr. 20.)

Commissioner applied the correct legal standards are grounds for reversal where such failure prejudices a claimant on the merits or deprives a claimant of a substantial right. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006).

## VI. Analysis

### *Moderate Difficulties in Concentration and Attention*

Alexander contends that the ALJ ignored a step three finding that she had moderate difficulties in concentration and attention and, therefore, miscalculated her RFC. (Doc. No. 13 at 12.) The Commissioner argues that the ALJ properly incorporated these difficulties in the RFC by limiting her to simple, repetitive work. (Doc. No. 17 at 10.)

The ALJ is charged with a duty to evaluate all of the medical opinions in the record and resolve any conflicts that might appear. 20 C.F.R. §§ 404.1527, 416.927. As such, the ALJ will give each opinion the weight deemed appropriate based upon factors such as whether the physician examined or treated the claimant, whether the opinion is supported by medical signs and laboratory findings, and whether it is consistent with the entire record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); SSR 96-2p. It is the responsibility of the ALJ alone, not a reviewing court, to weigh the medical evidence and resolve any conflicts that might appear. 20 C.F.R. §§ 404.1527(d), 416.927(d).

Opinions from agency medical sources are considered opinion evidence. 20 C.F.R. §§ 404.1527(f), 416.927(f). The regulations mandate that "[u]nless the treating physician's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do work for us." 20 C.F.R. §§ 404.1527(f)(2)(ii), 416.927(f)(2)(ii). More weight is generally placed on the opinions of examining medical sources than on those of non-examining medical sources. *See* 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1). However, the opinions of non-examining state agency medical consultants can, under some circumstances, be given significant weight. *Hart v. Astrue*, 2009

WL 2485968, at *8 (S.D. Ohio Aug. 5, 2009). This occurs because nonexamining sources are viewed "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." SSR 96–6p, 1996 WL 374180. Thus, the ALJ weighs the opinions of agency examining physicians and agency reviewing physicians under the same factors as treating physicians including weighing the supportability and consistency of the opinions, as well as the specialization of the physician. *See* 20 C.F.R. §§ 404.1527(d),(f), 416.927(d), (f).

The Sixth Circuit, however, has held that the regulation requiring an ALJ to provide good reasons for the weight given a treating physician's opinion does not apply to an ALJ's failure to explain his favoring of several examining physicians' opinions over others. *See Kornecky*, 167 Fed. App'x 496, 508 (6th Cir. 2006). The *Kornecky* Court found that:

> While it might be ideal for an ALJ to articulate his reasons for crediting or discrediting each medical opinion, it is well settled that:
>
> [a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party. Nor must an ALJ make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts.

*Id*.

Here, the ALJ's only reference to a medical opinion was to a consultative examiner, Roger Avery, Ed.S., who in July, 2007, diagnosed Alexander with a moderate major depressive disorder and pain and personality disorders. (Tr. 490.) Avery found that due to her depression, she was moderately impaired in her ability to interact with others, slightly impaired in her ability to understand, remember and carry out instructions, and mildly to moderately impaired in her ability to manage work stress. (Tr. 490-491.) In July, 2007, a state reviewing physician, Roy Shapiro, Ph.D., found Alexander to be moderately limited in maintaining attention and concentration for extended periods. (Tr. 514-516.) Based upon these opinions, the ALJ at step two found Alexander to have a severe impairment of depression (Tr. 14-15), and at step three, the ALJ noted Alexander's moderate difficulties with regard to concentration, persistence, or pace. (Tr. 16.) However, the ALJ also acknowledged that Alexander was able to participate in activities requiring an ability to concentrate, such as watching television on a regular basis,

reading, and managing her finances. *Id.*

At step four, the ALJ appears to have rejected the state physicians' opinions of moderate difficulties in concentration when he noted that although Alexander "appeared depressed, she ha[d] shown no evidence of psychosis or thought disorder." (Tr. 18.) The ALJ based this finding upon Alexander's inconsistent statements, as follows:

> The claimant has a history of mental illness with a diagnosis of moderate major depressive disorder, pain disorder, and personality disorder and a GAF of about 55. Although she has appeared depressed, she has shown no evidence of psychosis or thought disorder; her speech was normal; and she denied auditory or visual hallucinations. She was also diagnosed with obsessive-compulsive disorder with a GAF of around 55.
>
> At the hearing, the claimant stated that she is unable to work due to daily migraine headaches that can be so severe she is bedridden. She also suffers from two to three seizures a month despite medications. She has problems with her left leg numbness that affects her ability to stand and walk. She is able to lift up to 10 pounds and walk about ½ a block but finds sitting uncomfortable. Her depression, obsessive-compulsive disorder, and anxiety also interfere with her ability to work (Testimony of claimant). In other statements, the claimant indicated that she is independent in her activities of daily living. She watches television; reads; tends to her personal care; cares for her three children all of whom have medical problems; does household chores with her spouse; prepares meals; maintains an apartment; drives; and manages her finances (Exhibit 4E).[3]
>
> Thus, even the claimant's own inconsistent statements supports the conclusion that her functional capacity is not as limited; she can engage in activities not indicative of a person who is completely disabled. Moreover, the record suggests a substantial retained residual functional capacity. The claimant reported mental health problems yet she has never been hospitalized for this and her symptoms are not often noted in the record. The claimant has alleged seizures and disabling headaches and back pain. However, her symptoms have improved and appear to be under reasonable control with medications, and there are no indications of any ongoing limitations caused by these physical conditions.
>
> As noted above, the claimant leads an active life despite her impairments. Such a description of the claimant's daily activities suggest a greater mental and physical capacity than that alleged by the claimant and that would preclude all sustained work activity. As the record indicates, the claimant is able to effectively perform activities of daily living. In addition, such activities bolster a finding that the claimant retains a degree of functioning that is consistent with the demands of light work. She drives, does housework, prepares simple meals, cares for her children, watches television, and socializes with family.
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the

---

[3] The Court notes that based upon a disability statement completed by Alexander on June 25, 2007, she indicated that she does not drive. (Tr. 165.)

> alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment. Although initially the claimant's testimony appeared to be credible, there is very little medical evidence of record to support her allegations. Thus, to the extent that the claimant alleges impairments so severe as to preclude all sustained work activity, the undersigned does not find her fully credible.

(Tr. 18.) Based upon these opinions, the ALJ assessed Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) allowing for simple and repetitive tasks with occasional interaction with supervisors, coworkers, and the general public.

(Tr. 17.)

In calculating the RFC, it appears the ALJ did not consider the state physicians' opinions that Alexander's concentration and attention were moderately limited. More importantly, without explanation, the ALJ rejected the opinions. As the RFC did not exclude jobs requiring concentration and the ALJ did not explain why (other than to find Alexander not credible), he did not provide a meaningful analysis that is sufficiently specific. Alexander's argument that the ALJ failed to properly articulate the weight given to the state agency doctors is well-taken. The Court is unable to trace the path of the ALJ's reasoning as his analysis was insufficient under the Administration's procedural rules.

### *Step Five Analysis*

Alexander also contends that the ALJ's step five analysis was improper because he relied on a grid rule without the guidance of a vocational expert. (Doc. No. 13 at 9-14.)

At step five, the ALJ found Alexander could not perform her past work, either has she performed it or as generally performed in the national economy. (Tr. 19.) He then concluded that because the "additional limitations have little or no effect on the occupational base of unskilled light work," he applied Rule 202.20 and found her not disabled.

The determination of a claimant's RFC is based upon the severity of her medical and mental impairments. As such, it is made at stages one through four, when the claimant is proving the extent of her impairments. If a claimant does not secure an official RFC assessment by a medical examiner, and simply relies on other evidence to prove her impairments, it does not

8

follow that the Commissioner subsequently must provide the RFC assessment at step five. The step five analysis is meant to determine, given the severity of the impairments already proven, whether there are jobs in the economy which a claimant can perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999).

Although the claimant bears the burden of proving that her impairments have rendered her incapable of working at steps one through four of the sequential evaluation process, at step five, the burden shifts to the Commissioner to identify a significant number of jobs existing in the national economy which accommodates the plaintiff's RFC. *See Jones v. Comm 'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The Commissioner satisfies this burden by showing "substantial evidence that a claimant has the vocational qualifications to perform specific jobs[.]" *O'Banner v. Sec'y of Health, Educ. & Welfare*, 587 F.2d 321, 323 (6th Cir. 1978). "Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question, but only 'if the question accurately portrays plaintiff's individual physical and mental impairments.'" *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (*citing Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir.1984)).

An ALJ can use Medical-Vocational guidelines or "grids," found at 20 C.F.R. Part 404, Subpart P, Appendix 2, at the fifth step of the disability determination after the claimant has been found not to meet the requirements of a listed impairment, but found nevertheless incapable of performing past relevant work. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423-24 (6th Cir. 2008). Normally, where a claimant suffers from an impairment limiting only his strength (*i.e.*, exertional limitations), the Commissioner's burden is satisfied through reference to the grids. *Id*. at 424. The grids, in conjunction with the claimant's RFC, age, education and work experience, are used to determine whether the claimant can successfully adjust to other work. Rule 201.20 of the grid shows that a younger individual (ages 18-45) with a high school education and unskilled previous work experience will be found "not disabled."

SSR 83-14 advises the ALJ of three possible situations to consider:

1. Where it is clear that the additional limitation or restriction has very little effect on the exertional occupational base, the conclusion directed by the appropriate rule in Tables No. 1, 2, or 3 would not be affected.

9

> 2. Where it is clear that additional limitations or restrictions have significantly eroded the exertional job base set by the exertional limitations alone, the remaining portion of the job base will guide the decision.
>
> 3. Where the adjudicator does not have a clear understanding of the effects of additional limitations on the job base, the services of a VS will be necessary.

TITLES II AND XVI: CAPABILITY TO DO OTHER WORK-THE MEDICAL-VOCATIONAL RULES AS A FRAMEWORK FOR EVALUATING A COMBINATION OF EXERTIONAL AND NONEXERTIONAL IMPAIRMENTS SSR 83-14, 1983 WL 31254, *6.

> Regulation 202.00 further provides as follows:
>
> (a) The functional capacity to perform a full range of light work includes the functional capacity to perform sedentary as well as light work. Approximately 1,600 separate sedentary and light unskilled occupations can be identified in eight broad occupational categories, each occupation representing numerous jobs in the national economy. These jobs can be performed after a short demonstration or within 30 days, and do not require special skills or experience.
>
> (b) The functional capacity to perform a wide or full range of light work represents substantial work capability compatible with making a work adjustment to substantial numbers of unskilled jobs and, thus, generally provides sufficient occupational mobility even for severely impaired individuals who are not of advanced age and have sufficient educational competences for unskilled work.

20 CFR Ch. III, Pt. 404, Subpt P, App. 2. The regulations also indicate that when the grid rules apply, the existence of jobs is established. SSR 200.00(b).

Here, the ALJ, believing Alexander to have very limited nonexertional restrictions, used the grid rules to find her capable of light work:

> If the claimant had the residual functional capacity to perform the full range of light work, considering the claimant's age, education, and work experience, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.20. However, the additional limitations have little or no effect on the occupational base of unskilled light work. A finding of "not disabled" is therefore appropriate under the framework of this rule.

(Tr. 20.)

Alexander contends that because the ALJ found her to have moderate difficulties in concentration and attention at step three, the ALJ erred by failing to present a hypothetical question to a vocational expert. In support of this argument, Alexander cites a Sixth Circuit case in which the court specifically addressed an ALJ's duty to incorporate this particular limitation into a hypothetical question to obtain a vocational expert's opinion. *See Ealy v. Comm'r of Soc. Sec,*. 594 F.3d 504 (6th Cir. 2010).

10

In *Ealy*, the ALJ and a state agency physician found that the plaintiff had moderate limitations in concentration, persistence and pace. *Ealy*, 594 F.3d at 516. The state agency physician limited "Ealy's ability to sustain attention to complete simple repetitive tasks to 'two-hour segments over an eight-hour day where speed was not critical[,]'" but the ALJ merely informed the [Vocational Expert] that the plaintiff was limited to "simple repetitive tasks and instructions in non-public work settings." *Id*. The Sixth Circuit found that the ALJ's hypothetical question was inadequate to convey to the vocational expert Ealy's problems with concentration and pace because he omitted the speed and pace based restrictions announced by the state agency physician. *Id*. at 516–17.

In the instant case, because there was evidence that Alexander was moderately limited in her ability to maintain concentration and attention, a nonexertional impairment, the ALJ improperly used the grid rule. The ALJ should have presented a hypothetical question to a vocational expert. Although the ALJ states that he was limiting Alexander to simple, routine work, it was not enough to adequately convey Alexander's moderate limitations. Case law from this district and the Sixth Circuit suggests that the ALJ's hypothetical question or RFC must state something more than merely a limitation to simple, repetitive, and routine work in order to properly account for a plaintiff's moderate deficiency in concentration. *See Ealy*, 594 F.3d 504; *McNemar v. Astrue*, 2011 WL 5554051, *6 -8 (N.D. Ohio Aug. 29, 2011); *Candela v. Astrue*, No. 1:10–CV–1603, 2011 WL 3205726, at *10–12 (N.D. Ohio Feb. 5, 2010). As a consequence, the ALJ's failure to reference Alexander's moderate limitation in this area of functioning rendered his reliance on the grid rules improper.

This matter is remanded for a new decision that adequately explains the weight accorded to the medical sources of record in compliance with 20 C.F.R. §§ 404.1527, 416.927 and a proper step five analysis.

Plaintiff further contends that the ALJ improperly evaluated her seizure disorder and applied an incorrect and too stringent definition of disability. (Doc. No. 13 at 5-9,15-17.) The Court, however, will not address these issues as it has found remand is otherwise necessary.

Plaintiff can be awarded benefits only if proof of her disability is "compelling." *Facer v.*

*Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994) (the court can reverse the Commissioner's decision and award benefits only if all essential factual issues have been resolved and proof of disability is compelling). When the ALJ misapplies the regulations or when there is not substantial evidence to support one of the ALJ's factual findings and his decision therefore must be reversed, the appropriate remedy is not to award benefits. The Court, therefore, concludes that remand is required under "sentence four" of 42 U.S.C. § 405(g).[4]

### VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner not supported by substantial evidence. Accordingly, the decision of the Commissioner is vacated and the case remanded, pursuant to 42 U.S.C. § 405(g) sentence four, for further proceedings consistent with this Order.

IT IS SO ORDERED.

                                                s/ Greg White
                                                United States Magistrate Judge

Date: May 11, 2012

---

[4] Under sentence four of 42 U.S.C. § 405(g), the district court has the authority to reverse, modify, or affirm the decision of the Commissioner. This may include a remand of the case back to the Commissioner for further analysis and a new decision. A sentence four remand is a final judgment. *See Melkonyan v. Sullivan*, 501 U.S. 89, 97-102, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991).